UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE DENISE WILLIAMS,

    Plaintiff,

v.                                                                                               Case No. 1:21-cv-906

COMMISSIONER OF SOCIAL                                      Hon. Ray Kent
SECURITY,

    Defendant,
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB).

        On August 12, 2015, plaintiff filed an application for DIB alleging a disability onset date of December 15, 2014.  PageID.47.  After her claim was denied, plaintiff sought review from an Administrative Law Judge (ALJ), who found that plaintiff had severe impairments of obesity, depression, anxiety, and post-traumatic stress disorder (PTSD).  PageID.49.  The ALJ found that plaintiff was unable to perform her past relevant work as a call center operator and an emergency room registration clerk.  PageID.60-61.  However, the ALJ concluded that plaintiff was not disabled, and that she could perform a limited range of medium, unskilled work in the national economy, which included positions such as cleaner (240,000 jobs), machine tender (131,000 jobs), and day worker (100,000 jobs).  PageID.61-62.

1

Plaintiff appealed the decision to this Court. *See Jacqueline D. Williams v. Commissioner of Social Security*, 1:18-cv-848 (W.D. Mich.) ("*Williams I*"). After plaintiff filed her initial brief, the parties stipulated "to reversal of the Commissioner's decision with remand, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings, including a *de novo* hearing and a new decision" and for the Court to enter a judgment. *See Williams I* (Joint Stipulation (ECF No. 12). On December 17, 2018, this Court approved the stipulation and entered an order which reversed the ALJ's decision and remanded the matter to the Commissioner for further proceedings pursuant to sentence four. *See* Order (ECF No. 13); Judgment (ECF No.14).

On June 4, 2019, the Appeals Council entered an order vacating the ALJ's decision and remanding the case to the ALJ stating in part, "The decision does not adequately evaluate the opinion of the treating psychiatrist, Kameswara Tatineni, M.D. . . . Further consideration of Dr. Tatineni's opinions is required." PageID.1594-1595. On remand, the ALJ held a hearing on January 22, 2020, and entered a decision denying benefits on February 4, 2020. PageID.1550-1565. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

I.   **LEGAL STANDARD**

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla.

2

It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe

3

impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.   ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful employment since the alleged onset date of December 15, 2014, and met the insured status requirements of the Social Security Act through December 31, 2020. PageID.1552. At the second step, the ALJ found that plaintiff had severe impairments of obesity, depression, anxiety, and PTSD. *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.1554.

>The ALJ decided at the fourth step that:
>
>Claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), in simple, routine, repetitive work; with occasional work setting changes; no public interaction; and only occasional interaction with supervisors.

PageID.1555. The ALJ also found that plaintiff cannot perform any past relevant work as a call center operator and emergency room registration clerk. PageID.1564.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the medium exertional level. PageID.1564-1565. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as store laborer (95,000 jobs), dishwasher (171,000 jobs), and salvage sorter (220,000 jobs). *Id*. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 15, 2014 (the alleged onset date) through February 4, 2020 (the date of the decision). PageID.1565.

### III.    DISCUSSION

Plaintiff contends that residual functional capacity (RFC) findings are not supported by substantial evidence and that the hypothetical question posed to the vocational expert (VE) was flawed.

**A. The opinions of the ALJ's treating psychiatrist were entitled to controlling weight and the ALJ did not address his opinions as required by 20 C.F.R. 404.1527(c) and applicable case law.**

**1.    Legal standard**

Plaintiff contends that the ALJ did not give proper weight to or properly weigh opinion evidence from treating psychiatrist, Dr. Tatineni, as required by 20 C.F.R. 404.1527(c). Because plaintiff filed her application before March 27, 2017, the "treating physician rule" applies to the ALJ's decision. *See* 20 C.F.R. § 404.1527. A treating physician's medical opinions and

5

diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### 2. Plaintiff's psychiatric hospitalizations before 2014

The ALJ found that plaintiff had a history of three psychiatric hospitalizations prior to her alleged disability onset date of December 15, 2014:

> Many years prior to the [December 15, 2014] alleged onset date, in 1998, 2002, and 2004, claimant was psychiatrically hospitalized for a few days for depression and PTSD with paranoia, anxiety, and antisocial tendencies. The records indicate she had a history of polysubstance abuse (cocaine, marijuana, and alcohol). In 1998, claimant was first diagnosed with PTSD, apparently (and ironically) related to her being fired after threatening to kill her boss. In 2002, claimant reported being stalked by an ex-boyfriend who was arrested and incarcerated. During each admission, claimant was stabilized with medication and therapy (Exhibits 1F, 2F, 3F, 12F, and 13F).

PageID.1557.

6

### 4. Plaintiff's treatment with Dr. Tatineni

Plaintiff began treatment with Dr. Tatineni in July 2013.

During his initial evaluation, Dr. Tatineni saw claimant for 30 minutes and indicated that claimant reported depressed mood, flashbacks, and paranoia (Exhibit 8F/65). Dr. Tatineni's next record of seeing claimant is dated December 15, 2014 [the alleged disability onset date] – almost two and one-half years later. All treatment notes after this visit, through March of 2016, indicate that claimant's affect was not hostile and her moods were anxious and depressed. All treatment notes also state that claimant did not have any side effects to her medications. Dr. Tatineni's records indicate that he saw claimant once or twice a week for 20 to 30-minutes for medication reviews, but very few other findings are noted (Exhibits 8F, 11F, and 14F).

PageID.1557.

### 5. Dr. Tatineni's opinions

The ALJ addressed Dr. Tatineni's opinions as follows.

#### a. September 14, 2015

I note that on September 14, 2015, Dr. Tatineni opined that claimant had a limited but satisfactory ability to remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain ordinary routine without special supervision; make simple, work-related decisions; ask simple questions or request assistance; and be aware of normal hazards. He opined that claimant was seriously limited in her ability to respond appropriately to changes in routine and deal with normal work stress. Dr. Tatineni also opined that claimant was unable to meet competitive standards in her ability to maintain attention for two-hour segments; maintain regular attendance and be punctual; complete a normal workday/workweek; perform at a consistent pace; accept instruction and respond appropriately to criticism from supervisors and get along with co-workers. Dr. Tatineni opined that claimant had moderate limitations in her activities of daily living; marked limitations in her social functioning; marked limitations in her concentration, persistence, and pace; and one or two episodes of decompensation (Exhibit 9F). In addition to this form, Dr. Tatineni also provided a statement to claimant's representative and indicated that claimant alleged major depression, posttraumatic stress disorder and a lot of mood instability with occasional passive suicidal ideation. He also indicated that anger and irritability were a significant component of her illness (Exhibit 10F).

I give little weight to this opinion from Dr. Tatineni. While he is claimant's treating psychiatrist and a mental health specialist, his opinion is disproportionate to the medical evidence of record, specifically with his own treatment notes. While

> Dr. Tatineni's treatment notes document alleged symptoms such as anxiety, depression, anger, mania, agitation, irritability, flashbacks, nightmares, minimal interaction, inability to process, and poor concentration, these are all based on subjective reports from claimant. Dr. Tatineni's own observations consistently indicate similar findings of depressed and anxious mood, but often lack any further support for claimant's reported complaints (Exhibits 8F, 11F, 18F, 30F, 33F). In addition, Dr. Tatineni's opinion is not consistent with the record as a whole. For example, he opined that claimant was unable to meet competitive standards in her ability to maintain regular attendance and be punctual, but his treatment notes indicate that claimant was present and on time for appointments with him once or twice a week for several years. Finally, I note that the Administration is responsible for making the determination or decision concerning disability. A statement by a medical source that a claimant is able or not able to work does not mean that the Administration will find the same conclusion within the meaning of the Act and Regulations.

PageID.1562.

### b.     May 10, 2017

> On May 10, 2017, Dr. Tatineni opined that claimant's condition was the same as it was in September of 2015 without major improvement in any area. He reported that claimant was compliant with treatment but continued to decompensate. Regarding work-related mental activities, Dr. Tatineni's opinion differed in only one area from his September 2015 opinion - that he now considered claimant to have no useful ability getting along with coworkers. He opined that putting claimant in a work environment would not only aggravate her condition, but bring out aggression too. He opined that claimant had a significant amount of paranoia about what she believed other people were doing to harm her and historically had these thoughts about supervisors and coworkers and then acted on those thoughts (Exhibits 22F, 25F). In a work activities form, Dr. Tatineni opined that claimant would be absent from work about four days a month, but was improved in her ability to respond to changes in the work setting and deal with work stress. Finally, I note that Dr. Tatineni opined that claimant was unable to meet competitive standards in her ability to maintain attention, and had marked limitations in her concentration, persistence, and pace, yet, inconsistently, would be able to manage benefits in her own best interest (Exhibit 22F).

PageID.1563.

### c.     December 31, 2019

Finally, the ALJ reviewed Dr. Tatineni's updated opinion prepared a few weeks before the January 22, 2020 hearing:

8

> On December 31, 2019, Dr. Tatineni opined that claimant's condition was again the same as it was in May of 2017, with only a recent exacerbation that he anticipated would improve. He said claimant's depression impaired her ability to concentrate and carry out tasks. He also opined that claimant's paranoia made it impossible for her to be around people consistently eight hours a day, five days a week. He said she also could not tolerate someone like a boss having control over her (Exhibit 36F).
>
> I give this opinion little weight as well. In particular, I find Dr. Tatineni's opinion that it is impossible for claimant to be around people inconsistent with the overall medical evidence. Claimant reported difficulty getting along with other people and reported once being fired from her job secondary to workplace violence. However, claimant also indicated that she lived with family and helped her brother care for their ill father (Exhibit 4E). In addition, claimant's treatment providers failed to note that she had any particular difficulty getting along with others in the treatment setting (Exhibits 8F, 11F, 14F, 30F, and 33F). During her most recent hospitalization, she was able to participate in group therapy sessions, though she often stayed to herself (Exhibit 37F). Claimant also did not report specific incidents of difficulty with social anxiety or other social difficulties to her treating providers during the relevant period. I properly accommodated claimant's social limitations by limiting her to no interaction with the public and only occasional interaction with supervisors.

PageID.1563.

Plaintiff points out that she had seven psychiatric hospitalizations while under Dr. Tatineni's care from 2014 and 2019 (Plaintiff's Brief (ECF No. 9, PageID.2100), and that the ALJ did not properly consider these hospitalizations when evaluating the doctor's opinions:

From December 29 to 31, 2014 (PageID.525-527, 541-542, 553-554, 564) (plaintiff voluntarily admitted with crying spells, severe depression symptoms, very distraught, overwhelmed with anxiety, "unable to know what she is looking for, and what was inside her mind" and expressing suicidal thinking, suicidal ideation, and suicidal thoughts with an intent to want to kill herself" (PageID.525))[1];

---

[1] With respect to the December 19, 2014 admission, plaintiff notes that the ALJ incorrectly found "that claimant did not see Dr. Tatineni between December 19, 2014 and January 7, 2015". Plaintiff's Brief at PageID.2100 (citing ALJ's decision at PageID.1557). The records reflect that Dr. Tatineni treated plaintiff during her psychiatric hospitalization from December 29, 2014, through December 31, 2014. *Id*. (citing PageID.525-527, 541-554).

From February 3 to 6, 2015 (PageID.710-713, 716-717, 773-776, 859-60) (plaintiff admitted for nightmares, intrusive thoughts that have never gone away, recalling trauma she suffered, and "depression, aggression, agitation both in terms of suicidal/homicidal nature are the reasons for immediate hospitalization here" (PageID.711));

From June 5 to 8, 2015 (PageID.1341-1349) (plaintiff presented to the emergency department stating that she has been gradually depressed since December 2015, she is suicidal, and that she was encouraged by Dr. Tatineni's office to present to the ED) (PageID.1284) (plaintiff's complaints included fear of dying, flashbacks, hearing voices, poor concentration, problem with medication, stressed at work, trauma recollections, "I wanted to die," "I was hearing voices telling me to hurt myself," and "I thought I was losing my mind," with onset of symptoms starting two weeks ago and worsening) (PageID.1345-1356);

From March 3 to 6, 2016 (PageID.1267-1270, 1277-78) (significant nightmares, anger, agitation, labile moods, negative thinking, restlessness, hopelessness, sadness, intrusive thoughts about her job, and "she could not even further concentrate and felt that life is not worth living any more, having suicidal expressions with intent to harm herself are the reasons for her admission" (PageID.1267);

From August 17 to 19, 2016 (PageID.1322-1330, 1333) (the indications for admission included "of suicidal potential, multiple attempts at outpatient have not been successful, of inability to care for self due to mental illness, potential for complications due to medication management that precludes outpatient approach, inpatient milieu, to consider medications, to consider referral to intensive outpatient program and to consider family/marital therapy session" (PageID.1323);

From April 14 to 17, 2017 (PageID.1501-1511, 1515) (admitted voluntarily with suicidal ideation and anger, agitation and even homicidal thoughts, "[f]elt like everything is falling apart and there is no way out and expressed suicidal thinking and ideation with the plan to kill herself, are the reasons for admission here) (PageID.1507); and

From December 31, 2019 to January 3, 2020 (PageID.2027, 2058-70) (suicidal and homicidal ideation, plaintiff reported that she had a plan to walk into traffic or OD on pills, patient reported that her psychiatrist Dr. Tatineni sent her in, plaintiff reported "that Satan tells her to 'kill myself and other people'" but reported "that she does not want to do it" ) (PageID.2027).

When evaluating these hospitalizations, the ALJ did not find plaintiff's psychiatric hospitalizations as evidence of a serious medical condition, but rather as the result of "gaps" or "inconsistencies" in her treatment:

> Although claimant was hospitalized a total of seven times during the relevant period for acute exacerbation of her mental impairments, these hospitalizations often coincided with gaps or inconsistencies in her treatment. Once she started attending more regular treatment, claimant did not require hospitalization for her mental health symptoms for over two and a half years, spanning from April 2017 to December 2019.  Once she started attending more regular treatment, claimant did not require hospitalization for her mental health symptoms for over two and a half years, spanning from April 2017 to December 2019. This is inconsistent with the claimant's allegations that her symptoms have worsened, as well as Dr. Tatineni's opinions that the claimant's conditions are progressive in nature (Exhibit 36F; Hearing testimony).

PageID.1560.

The Court concludes that the ALJ did not provide good reasons for discounting Dr. Tatineni's opinions. As discussed, the ALJ found that Dr. Tatineni's opinions were "disproportionate to the medical evidence of record, specifically with his own treatment notes" and "not consistent with the record as a whole."  PageID.1562.  The ALJ's findings are not supported by the medical evidence, which includes seven psychiatric hospitalizations during the

11

relevant time period. The Court disagrees with the ALJ's suggestion that plaintiff's multiple psychiatric hospitalizations are not evidence of a serious medical condition, but merely the result of "gaps" or "inconsistencies" in her treatment. Courts have recognized that "[u]nlike a physical impairment, it is extremely difficult to predict the course of mental illness," *Poulin v. Bowen*, 817 F.2d 865, 875 (D.C. Cir. 1987) and that "it is inherent in psychotic illnesses that periods of remission will occur, and that such remission does not mean that the disability has ceased," *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (internal quotation marks and brackets omitted). Furthermore, while the ALJ gave little weight to Dr. Tatineni's opinions, it is unclear as to which of the doctor's limitations the ALJ adopted. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Tatineni's opinions, specifically with respect to plaintiff's psychiatric hospitalizations.

> **B. The residual functional capacity (RFC) determination failed to consider the effects of all plaintiff's well-documented impairments required by 20 C.F.R. § 404.1520a.**
>
> **C. The ALJ's hypothetical to the vocational expert (VE) did not accurately portray plaintiff's limitations.**
>
> **D. The ALJ failed to properly address plaintiff's symptoms as required by 20 C.F.R. 404.1529(c)(3) and SSR 16-3p.**

Plaintiff consolidated these three issues. The gist of plaintiff's claim is that the ALJ failed to develop an appropriate RFC at step four which resulted in the submission of an improper hypothetical question to the VE at step five.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. *See* 20 C.F.R. § 404.1545. It is defined as "the maximum degree to

which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The ALJ considers impairments that are both "severe" and "not severe," *see* 20 C.F.R. § 404.1545, "based on all the relevant medical and other evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(e).

At step five, an ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779.

Plaintiff points out that the ALJ found that she had the same RFC as in *Williams I* (PageID.55, 1555), even though she had more limitations. This appears in the ALJ's evaluation of the state agency psychologist's November 9, 2015 opinion (PageID.117-125) which states in pertinent part:

> I give some weight to this opinion from Dr. Schirado, as he is a mental health specialist with Social Security disability program expertise and experience evaluating Social Security disability cases. But he lacked the opportunity to review the entire medical record, including recent, hearing level, medical exhibits that show <u>claimant is more limited especially with regards to interacting with the public and supervisors</u>.

PageID.1561 (emphasis added). Plaintiff also points out that the ALJ did not address time that she would be off task or account for work absences due to psychiatric hospitalizations and doctor appointments. Given these considerations, and that Dr. Tatineni's treatment and opinions comprise a significant part of the medical record, the Court concludes that the Commissioner should also re-evaluate plaintiff's RFC and the vocational evidence on remand.

13

## IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to re-evaluate Dr. Tatineni's opinions, as well as plaintiff's RFC and the vocational evidence.  A judgment consistent with this opinion will be issued forthwith.

Dated:  March 30, 2023  /s/ Ray Kent
　　　　　　　　　　　　　　　　　　　　　　　　　　RAY KENT
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge